FOR THE

## EASTERN DISTRICT,

### 1856.

42 497
85 374

## COUNTY OF PENOBSCOT.

### SAMUEL LORD & al. *versus* ENOS WOODWARD.

The provision of the R. S. of 1841, c. 67, § 9, that "any person whose timber shall be so intermingled with the logs, &c., of another, that the same cannot conveniently be separated," may drive the whole to the market or place of manufacture, and have a lien upon the logs, &c , of the other owner, for reasonable compensation, is in derogation of the common law, and must be strictly construed.

In order to recover such "reasonable compensation," under the statute, the *entire service* of driving the logs must be performed by the plaintiff, without any assistance from the other owner.

This statute is not applicable to the case of a party who *aids* in driving the common property. It gives no lien for such service.

The exclusive possession of the logs must also continue in the one entitled to the lien in order to effectually secure the object of it.

When the driving is the joint work of two or more owners, each may recover of the other compensation for any excess of service rendered by him beyond his equitable share; but neither has a lien upon the property of the other for such excess.

ON EXCEPTIONS from *Nisi Prius*, CUTTING, J., presiding.

This was an action founded on § 9 of c. 67, of R. S. of 1841. Plea, general issue.

In the spring of 1855, the plaintiffs and defendant were severally engaged in driving logs on the west branch of Union river, each party having a large force of men under them, so employed. Their two drives came together at the mouth of Oxhead stream; and the logs in them became so intermixed that they could not be conveniently separated. From that point the parties drove together, without any contract, the men in the employ of each driving indiscriminately the logs of both parties.

The plaintiffs contended that they had a larger force engaged at work, in proportion to the number of their logs, than the defendant had, and that they had rendered more service in driving defendant's logs than defendant had in driving plaintiffs' logs. The demand was duly proved. The presiding Justice, among other things, instructed the jury, that if they were satisfied that the plaintiffs rendered more service to the defendant, in driving his logs, than the defendant did, in driving theirs, they would find a verdict for the plaintiffs for the value of such excess of work.

The jury returned a verdict for the plaintiffs.

To all which rulings and instructions the defendant excepted.

*J. A. Peters,* for plaintiffs, contended that the claim was valid by force of the Revised Statutes, c. 67, § 9, and that the statute should be liberally construed. *Winslow* v. *Kimball,* 25 Maine, 493.

*Rowe & Bartlett,* for defendant.

The facts proved do not make a case within the statute.

The services contemplated by § 7 of the Act of 1831, c. 521, of which § 9 of c. 67, R. S., is a reënactment, are such as give the persons driving actual or constructive possession of the logs; the lien given by those sections is founded on possession.

The provision relied on is in derogation of common law rights; it authorizes one man to take the possession and con-.

trol of another's property, and to remove it to a distant place for his own convenience, without the request, and, perhaps, in opposition to the wishes and interest of the owner, and then compels the owner to pay for such removal. It must be construed strictly.

The case is not within the spirit or meaning of the statute. Had it been within the intention of the Legislature, it would have been specially provided for.

"Further, as a rule of exposition, statutes are to be construed in reference to the principles of common law. For it is not to be presumed that the Legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the Act did not intend to make any alteration other than what is specified and besides what has been plainly pronounced; for if the parliament had had that design, it is naturally said they would have expressed it." Dwarris on Stats. *695, Law Lib. vol. 9. "So when a statute commences with a particular enumeration, no other thing shall be taken by equity." Ib. *731. It is not within the mischief provided against. If within the mischief, not being embraced within the language of the statute, the rules of construction do not extend the remedy to the case.

In *Brandling* v. *Barrington*, 6 B. & C. 475, (not re-published in full in the American common law,) Lord TENTERDEN said, "But it is said it was within the equity; speaking for myself alone, I cannot forbear observing, that I think there is always danger in giving effect to what is called the equity of a statute; and it is much safer and better to rely on and abide by the plain words; although the Legislature might possibly have provided for other cases, had their attention been directed to them." BAILEY, J., said, "I certainly think, that the present case comes within the mischief intended to be remedied, and I should have been better satisfied if it could have been brought within the fair construction of the words of the enactment. But I think we should be attributing too comprehensive a meaning to the words of the statute." HOLROYD, J., said, "This case does not appear to have been

contemplated by the Legislature, although it may perhaps be within the mischief which they intended to remedy." DWARRIS, J., after citing the above remarks, *711, says, " The result is, that to bring a case within the statute, it should be, not only within the mischief contemplated by the Legislature, but also within the plain intelligible import of the words of the Act of Parliament. A *casus omissus* can in no case be supplied by a court of law; for that would be to make laws. Judges are bound to take the act of Parliament as the Legislature have made it." And, on *721, " The Legislature, as was once well observed by Mr. Justice HEATH, ' is always at hand' to supply deficiencies or correct mistakes."

" Where the language of the Act is not clear, and is of doubtful construction, the Court may well look at every part of the statute; at its title, and the mischief intended to be remedied in carrying it into effect. But it is not for the Court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases not described, because no good reason can be assigned why they were excluded from its provisions." *Dean* v. *Reid*, 10 Peters, 524; 2 Curtis, 231.

TENNEY, C. J.— This action is sought to be maintained under the provision in R. S., c. 67, § 9, that "any person, whose timber shall be so intermingled with the logs, &c., of another, that the same cannot be conveniently separated for the purpose of being floated to the market or place of manufacture, may drive all the logs, &c., with which his own are so intermingled, toward such market or place, &c., and shall be entitled to a reasonable compensation from the owner, to be recovered after demand therefor, &c., in an action of the case; and he shall have a prior lien on the same, until thirty days after the timber shall have arrived at its place of destination, in order to enable him to attach the logs, &c., in such action."

This statute gives to a party a right to enforce a claim for services, supposed to be rendered for the benefit of another, but without his request, and sometimes without his knowledge,

and possibly against his wishes. Such a statute is in deroga-
tion of the common law, and must have a strict construction.

To entitle a person to recover under this provision, it con-
templates that he shall render the entire service of driving his
own logs, and those of another intermingled therewith, with-
out any assistance from the latter. Such is the literal mean-
ing of the language employed. The person in whose favor
the statute was made, "may drive all logs, masts and spars,
with which his own are so intermingled." The provision is
not made applicable to a case where the party owning logs
intermingled with those in which he has no interest, *aids* the
owner of the latter in a joint operation of driving the whole;
and the Legislature do not seem to have had any such com-
mon labor in view; or to have provided a mode of compen-
sation for the excess of the labor of one, over that of an-
other, according to the amount of timber driven.

The lien given to the party, who shall drive all the logs so
intermingled, is declared to be, that he may attach the same,
for the recovery of compensation for his services. Possession
of the timber must continue in the one entitled to the lien, to
effectually secure the object of it; and must, from its nature,
exclude the possession of the owner. When the driving is
the joint work of two or more owners, each may claim com-
pensation of the other for an excess of service, beyond his
equitable share. The logs in such a case, are supposed to be
in the possession of all the owners, who aided in driving
them; and it is difficult to see in what manner a lien in favor
of each one against the other, or others, can exist, and be
made effectual. The lien extends to all logs driven under
this provision. And it does not appear to have been intend-
ed, that compensation could be enforced thereunder, for ser-
vices rendered in such a manner, that a lien upon the timber
does not attach.

The claim is for services rendered in *aiding* the defendant
in driving his logs. From the case, it appears, that no entire
portion of the timber belonging to him was driven by the

plaintiffs, and the statute invoked for the recovery of the compensation demanded is inapplicable.

*Exceptions sustained; new trial granted.*

HATHAWAY, APPLETON, MAY and GOODENOW, J. J., concurred.